RAYMOND MALBY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Malby v. Commissioner
Docket Nos. 1155-89, 11453-89
United States Tax Court
T.C. Memo 1991-364; 1991 Tax Ct. Memo LEXIS 413; 62 T.C.M. (CCH) 343; T.C.M. (RIA) 91364; August 6, 1991, Filed *413 Decisions will be entered for the respondent. Kevin J. Mirch, for the petitioner. David W. Sorensen, for the respondent. GUSSIS, Special Trial Judge. GUSSIS
MEMORANDUM OPINION These consolidated cases were heard pursuant to the provisions of section 7443A(b) of the Code and Rule 180 et seq. [1]
Respondent determined deficiencies in petitioner's Federal income taxes for the tax years ended 1985 and 1986 in the amounts of $ 1,268 and $ 509, respectively. Respondent also determined that petitioner was liable for the addition to tax under section 6651(a)(1) for the 1986 tax year in the amount of $ 80. The issues for decision are: (1) Whether petitioner has adequately substantiated a $ 100,000 investment in a ranch operation in Mexico, and if so, whether he is entitled to a loss deduction with respect to this investment *414 in 1985; (2) whether petitioner is entitled to carry such loss forward to 1986; and (3) whether petitioner is liable for the addition to tax under section 6651(a)(1) for 1986. Some of the facts have been stipulated, and they are so found. Petitioner resided in Sparks, Nevada, at the time the petition herein was filed. Petitioner moved to Mexico in late 1978 and lived there until his return to the United States in 1985. While in Mexico, petitioner married Carmen Martinez who was supporting her seven children through the operation of a school. Petitioner helped in the operation of the school. Prior to moving to Mexico, petitioner lived in San Antonio, Texas. In 1978 petitioner was acquainted with one Sergio Limon who owned a parcel of ranchland with a small feed lot in Totolapan, Mexico, near Guadalajara. Limon was seeking additional capital to construct various capital improvements to enlarge the cattle feeding operations. Petitioner claims that he advanced some $ 100,000 in 1978 to Limon to construct the needed improvements and that over the years 1979 through 1983 he was paid a total of $ 21,500 by Limon. Limon's enterprise apparently did not fare well. Petitioner moved *415 back to the United States in 1985. He claims that Limon ceased doing business in 1985, that he sold the ranch, and that petitioner did not receive any of the proceeds from this alleged sale. On his 1985 tax return, where he listed his occupation as construction worker, petitioner claimed a section 1231 loss in the amount of $ 78,500 in 1985 with respect to his purported investment in the ranch in Mexico. The reduced amount reflects the payments received by petitioner from Limon over the years 1979 through 1983. Petitioner used the section 1231 loss to fully offset his gross income of $ 15,356 for the 1985 tax year. Petitioner then carried the unused section 1231 loss forward to 1986 and used it to fully offset his gross income in 1986 of $ 7,585. Petitioner has the burden of proof. Rule 142(a). Petitioner's testimony was self-serving and wholly unconvincing. We are not required to accept testimony unquestioningly; we are entitled to take into account whether it is improbable, unreasonable, or doubtful. , affg. a Memorandum Opinion of this Court. In support of his contention that he *416 advanced $ 100,000 to Limon in 1978, petitioner offered in evidence certain cashier's checks and bank documents. A cashier's check dated December 29, 1978, and drawn on the Frost National Bank in San Antonio, Texas, is made out to petitioner in the amount of $ 8,000. A second cashier's check, also dated December 29, 1978, and drawn on the Frost National Bank, is similarly made out to petitioner in the amount of $ 4,000. Both checks were negotiated by petitioner at Banpacihco in Mexico where petitioner had an account. A third purported cashier's check dated December 20, 1978, supposedly payable to petitioner in the amount of $ 27,284.50 is incomplete on its face in that it lacks the signature of any responsible bank official indicating that it was ever validly issued. Nor is there any indication that such check was ever negotiated. Another purported cashier's check payable to petitioner in the amount of $ 3,000 is similarly incomplete on its face and, again, there is evidence that it was never negotiated. Finally, the record shows that on December 27, 1978, petitioner closed a Swiss bank account and transferred the balance of approximately $ 21,377 to his bank account at Banpacihco. *417 He also testified that he received a $ 12,000 loan from his former wife. On this record, we find that only the two valid cashier's checks in the total amount of $ 12,000 and the transfer of funds in the amount of $ 21,377, for a total of some $ 33,000, represent funds actually deposited in petitioner's bank account at Banpacihco. As indicated, all of the checks offered in evidence by petitioner were made payable to his order. Petitioner negotiated all of the checks at the bank where he maintained his account. There the trail ends. There is no persuasive evidence in the record, documentary or otherwise, to establish that any portion of such funds, or any other funds available to petitioner, were ever used to invest in the Limon venture. Section 6001 provides that every person liable for any tax imposed by the Code should keep such records as the Secretary may from time to time prescribe. Petitioner presented no records whatever with respect to the purported venture. It is strange that no documentation was available to record the financial and operational aspects of a business operation of such magnitude that was supposably carried on over a period of some seven years. Petitioner *418 lived in Mexico over a period of some seven years from late 1978 to 1985. There is no indication in the record that he was regularly employed while in Mexico, and presumably his personal living expenses over the years 1978 to 1985 were covered by the funds he brought to Mexico at or about the time he arrived there late in 1978. He filed no Federal income tax returns during the period he lived in Mexico. He did some construction work at the Limon ranch. The record shows he received payments from Limon over the years 1979 through 1983 (ranging from $ 1,200 in 1983 to $ 8,700 in 1980) in the total amount of $ 21,500 over the entire period. He also testified that he assisted his wife in Mexico with the operation of her school but received no compensation for his work. Against this background, we find it implausible that petitioner was in a position to invest $ 100,000, or any other amount, in a feed lot venture or any other venture. Moreover, the testimony regarding this alleged transaction is so nebulous that it is difficult to discern with any assurance the intended nature of the alleged involvement with Limon. There are contradictions in the record with respect to the exact *419 legal nature of petitioner's participation in the business enterprise. Petitioner originally claimed a deduction for the entire $ 78,500 loss on Form 4797 of his 1985 return (gains and losses from sales or exchanges of assets used in a trade or business). Yet his presentation at the trial did not seem to focus on establishing the elements of a loss from the sale or exchange of section 1231 assets. We can only surmise as to the precise theory petitioner relies upon to support the deduction of the loss supposedly incurred in 1985. Of course, the tax treatment of the loss under the statute would necessarily turn upon the nature of the loss incurred. However, in view of our conclusion that petitioner has utterly failed to establish with any degree of conviction that he actually made the claimed advances to Limon, we need not speculate further as to the possible theoretical scenarios that could conceivably support the loss deduction under some section of the Internal Revenue Code. Petitioner has failed to meet the requisite burden of proof. We conclude, on this record, that petitioner is not entitled to the deduction claimed by him on his 1985 return or the carry over-deduction *420 claimed on his 1986 return. Respondent is sustained on this issue. Respondent determined an addition to tax under section 6651(a)(1) for the year 1986. Section 6651(a)(1) imposes an addition to tax for failure to file a timely return unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect. Petitioner has the burden of proof. ; Rule 142(a). Petitioner was granted an extension for filing his 1986 tax return until October 15, 1987. The return was signed by petitioner on October 16, 1987, mailed to the Internal Revenue Service in an envelope with the postmark date of October 17, 1987, and received by Ogden Service Center on October 20, 1987. Thus, the return is treated as filed on October 20, 1987. , affd. . Petitioner offered no explanation for failing to file the income tax return on time. On this record, therefore, respondent's determination must be sustained. Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩